UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHEYENNE BROWN,<br><br>                      Plaintiff,<br><br>   v.<br><br>CLALLAM BAY CORRECTIONAL OFFICERS SHEA GRIMES, TEACHOUT, CAULKINS, JOHN DOE DEFENDANTS,<br><br>                      Defendants. | No. C12-5692 RBL-KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  January 3, 2014** |

    Before the Court is the motion for summary judgment of Defendants Shea, Grimes, Teachout, and Caulkins.  Dkt. 21.  Defendants are correctional officers at the Clallam Bay Correctional Center (CBCC) where Plaintiff Cheyenne Brown is incarcerated.  On November 12, 2013, Defendants provided Mr. Brown with a notice consistent with *Woods v. Carey,* 684 F.3d 934, 935, 940-41 (9th Cir. 2012).   Mr. Brown filed no papers in opposition to the motion.

    Based on the Court's review of the motion, summary judgment evidence, and balance of the record, the Court concludes that Defendants' motion for summary judgment should be granted.

## BACKGROUND

    This case is proceeding under Mr. Brown's Second Amended Complaint. Dkt. 8.  Mr. Brown claims that he was assaulted by other inmates at CBCC on two occasions and that each time correctional officers were slow to respond, causing him to suffer further injuries.

REPORT AND RECOMMENDATION- 1

# FACTS

**A.     April 24, 2011 Incident**

Mr. Brown alleges that on April 24, 2011, he was assaulted by Inmate Joshua Gordon in the CBCC dining hall. Dkt. 8, at 3. Daniel Cumming, a Correctional Officer who was working in the CBCC dining hall on that day, saw Mr. Gordon run from the salad bar area toward Mr. Brown and strike Mr. Brown in the face. According to Officer Cumming, Mr. Brown ran around approximately 4 tables back to his table while Officer Cumming shouted at both inmates to get on the ground and stop fighting. Neither inmate complied with his directions but Mr. Gordon stopped chasing Mr. Brown. Dkt. 26, Declaration of Daniel Cumming, ¶ 2. Officer Cumming took Mr. Gordon to the floor and cuffed him. Dkt. 26, Cumming Decl., ¶ 2. Both inmates were taken to medical. *Id.*

The incident was recorded on video. *Id.,* ¶ 3. Officer Cumming reviewed the video of the incident and testifies that seven seconds elapsed from the time Mr. Brown was attacked until the time Mr. Brown and Mr. Gordon were separated. *Id.*

Captain Edwin Reetz is responsible for security management at CBCC and is the custodian of security video taken at the facility. Dkt. 23, Declaration of Edwin A. Reetz, ¶¶ 1,4. The fixed ceiling-mounted video camera in the CBCC dining hall recorded the incident between Mr. Brown and Mr. Gordon. *Id.*, ¶ 3. Captain Reetz viewed the video recording of April 24, 2011 incident and testifies that the video shows that Mr. Gordon assaulted Mr. Brown and that Mr. Brown stood up and ran away from Mr. Gordon. According to the time stamp on the video recording, the incident began at 12:24:39:125 and ended eight seconds later at 12:24:46:593, when officers assigned to the hall separated the inmates. *Id*.

REPORT AND RECOMMENDATION- 2

After the incident, Mr. Brown was taken to the infirmary where he was examined by Registered Nurse Dixie Hallenberg. Nurse Hallenberg's medical note of April 24, 2011 states that Mr. Brown had a "two centimeter reddened circular area on his left arm and two large reddened areas on his upper back. Brown denied pain or other injury." Dkt. 27, Declaration of Loretta G. Onstead, Registered Health Information Technician, ¶ 2, Exh. A.

**B.     May 18, 2012 Incident**

On May 18, 2012, Mr. Brown was in the C-unit day room playing cards with other inmates. At 7:53 a.m., Inmate T. Bjornson attempted to assault Mr. Brown. Mr. Brown stood up and ran from Mr. Bjornson. Correctional Officer Mitchell Whorton was monitoring inmates in the C-unit duty office and was forty feet away from Mr. Bjornson and Mr. Brown when he saw Mr. Bjornson chasing Mr. Brown around the day room. Dkt. 25, Declaration of Mitchell R. Whorton, ¶ 3. Officer Whorton immediately radioed to CBCC base that there was a fight in the C-unit green pod and quickly moved toward the two inmates and ordered them to "break it up." According to Officer Whorton, "within seconds" CO Rooney opened the green pod door, Mr. Brown ran out into the rotunda, and Officer Whorton cuffed Mr. Bjornson. Officer Whorton estimates that Mr. Bjornson was "actually engaged" with Mr. Brown for "approximately ten seconds." *Id.*, ¶¶ 3-4

Correctional Officer John M. Wray was the relief officer in C-unit on May 18, 2012. He saw Mr. Brown between the tables of the dayroom trying to elude Mr. Bjornson. He also saw and heard CO Whorton call out fight in progress and give verbal commands to the inmates to stop. Dkt. 24, Declaration of John M. Wray, ¶ 4. Officer Wray observed as Mr. Brown stepped out of the dayroom into the rotunda. He estimates that from the time the incident first began

REPORT AND RECOMMENDATION- 3

until Mr. Brown and Mr. Bjornson were physically separated and placed in restraints, approximately 45 seconds had elapsed. *Id.*, ¶ 5.

Correctional Officer Chester L. Rooney was in the C-unit control booth on May 18, 2012. According to Officer Rooney, he was about 15 to 20 feet from Mr. Bjornson and Mr. Brown when he saw Mr. Bjornson chasing Mr. Brown around the day room. Dkt. 22, Declaration of Chester L. Rooney, ¶ 3. Officer Rooney remained in the control room (from which doors can be locked or unlocked) while he watched Officers Whorton and Wray "immediately" move into the day room to control the inmates. Officer Rooney then "opened the dayroom entry door into the C- unit rotunda so that Mr. Brown could be separated from Mr. Bjornson. Officer Rooney states that the inmates were detained without further incident and that neither appeared to be injured. *Id.,* ¶ 4.

Captain Reetz reviewed the video of the May 18, 2012 incident. Dkt. 23, Reetz Decl., ¶ 6. According to Captain Reetz, the video recording of the incident shows that the incident began at 07:53:40:531 and ended 16 seconds later, at 07:53:56:546.29. *Id.*

Mr. Brown was taken to the infirmary where Physician's Assistant Randy Pierce examined him. PA Pierce's chart note states that Mr. Brown sustained a "contusion to the right side of his head. Brown did not appear to be in distress and he denied any severe injury, any loss of consciousness, changes in vision or hearing or any other injuries." Dkt. 27, Onstead Decl., ¶ 3, Exhs. B, C. PA Pierce's notes indicate that he advised Mr. Brown to use ibuprofen and ice and "follow up in sick call on an as needed basis. Patient left the healthcare unit in good condition and was returned to his housing unit." *Id.*, Exh. B.

According to Ms. Onstead, there are no other medical records relating to the incidents of April 24, 2011 or May 18, 2012. Dkt. 27, Onstead Decl., ¶ 5.

REPORT AND RECOMMENDATION- 4

## SUMMARY JUDGMENT STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).  A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law.  *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial."  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).  The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint.  *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).  A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."

REPORT AND RECOMMENDATION- 5

*Automobilemen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). This is true even when a party appears *pro se*. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

**DISCUSSION**

**A.    Eighth Amendment**

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold. v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Id.* (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

"[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (*quoting Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.1988)).

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious,".... For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

*Id*. at 834 (citations omitted).

REPORT AND RECOMMENDATION- 6

Mr. Brown does not allege and there is no evidence, that any of the defendants had advance notice of any substantial risk of harm to Mr. Brown.  The evidence also reflects that the defendants who observed the assaults of April 24, 2011 and May 18, 2012 reacted quickly and reasonably to the threat to Mr. Brown.  In fact, the evidence reflects that in both instances, prison guards responded within seconds to protect Mr. Brown.  He offers no evidence to the contrary except for his conclusory perception that it took minutes instead of seconds for someone to come to his aid.

Viewing the evidence in the light most favorable to Mr. Brown, the undersigned concludes that Mr. Brown has failed to raise an issue of material fact relating to his claim that Defendants were deliberately indifferent to his safety.  Accordingly, Defendants are entitled to summary judgment on Mr. Brown's Eighth Amendment claims.

**B.     Negligence**

To the extent Mr. Brown's amended complaint can be construed to allege a state negligence claim, that claim is also without merit.

In order to establish a cause of action for negligence, the plaintiff must prove each of the following elements by a preponderance of the evidence: (1) the existence of a duty owed to the plaintiff by the defendant; (2) breach of that duty; (3) injury resulting from the breach of duty; and (4) proximate cause between the breach of duty and the injury.  *Hutchins v. 1001 Fourth Av. Assoc.*, 116 Wn.2d 217, 802 P.2d 1360 (1991).

Mr. Brown alleges in his amended complaint that no corrections officer came to his aid after either the April 24, 2011 or the May 18, 2012 assaults for about ten minutes.  Dkt. 8, at 3.  Correctional officers present at the scenes of the assaults testified to the contrary and their testimony is confirmed by video recordings of the assaults.  According to Captain Reetz, 8

REPORT AND RECOMMENDATION- 7

seconds elapsed from the time Mr. Brown was assaulted by Mr. Gordon until officers arrived, and 16 seconds elapsed from the time Mr. Brown was assaulted by Mr. Bjornson until officers arrived.  There is no evidence to the contrary except for Mr. Brown's estimate of the amount of time that elapsed.

Mr. Brown alleges that "the slow, negligent and indifferent response by the first response team subjected the plaintiff to unnecessary pain, trauma, abuse, mental anguish, emotional shock, and psychological injury." As noted above, this claim has no basis in fact.  Moreover, before the state (or its officials) may be held liable for injury one inmate inflicted by another inmate, there must be proof of knowledge on the part of prison officials that such an injury will be inflicted, or good reason to anticipate such, and then there must be a showing of negligence on the part of these officials in failing to prevent the injury.  *Winston v. State Dept. of Corrections,* 130 Wn.App. 61, 64, 121 P.3d 1201 (2005).  Here, there is no evidence that Defendants had any reason to know that either fight would occur and even if there was reason to anticipate either fight, there is no evidence that Defendants acted negligently in their responses to the fights.

## CONCLUSION

Based on the foregoing, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 21) be **GRANTED,** and Plaintiff's claims against Defendants be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the

REPORT AND RECOMMENDATION- 8

time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **January 3, 2014**, as noted in the caption.

      **DATED** this  11th  day of December, 2013.

                                            Karen L. Strombom
                                            United States Magistrate Judge

REPORT AND RECOMMENDATION- 9